UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

EVODIE SEBIHELE,                                   )
                                                   )
                    Petitioner,                    )
                                                   )
            v.                                     )       No. 4:26-cv-00176-TWP-KMB
                                                   )
SCOTT A. MAPLES, JR. Sheriff, Clark County, in     )
his official capacity in overseeing the Michael L. )
Becher Adult Correctional Complex,                 )
SAMUEL OLSON Immigration and Customs               )
Enforcement Field Office Director, in his official )
capacity,                                          )
MARKWAYNE MULLIN Secretary, Department             )
of Homeland Security, in his official capacity,    )
TODD BLANCHE Acting Attorney General,              )
Department of Justice, in his official capacity,   )
                                                   )
                    Respondents.                   )

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

This matter is before the Court on Noncitizen Evodie Sebihele's Petitions for Writ of

Habeas Corpus. (Dkt. 1). Petitioner challenges the lawfulness of her continued detention at the

Clark County Jail, where she is detained on behalf of U.S Immigration and Customs Enforcement

(ICE). The Court **grants** Ms. Sebihele's petition and orders the respondents to either afford her a

bond hearing or release her from custody.

**I. Facts**

Ms. Sebihele is a Congolese citizen and national. She presented herself at a port of entry

in Otay Mesa, California 2015 and at that time, she did not possess or present proper

documentation to enter. (Dkt. 7 at 2). Ms. Sebihele applied for admission to the United States in

1

2015 at the Otay Mesa Port of Entry. Immigration officials deemed her inadmissible and placed her in a removal proceeding under 8 U.S.C. § 1229a. ( Dkt. 7-1 at 9).

The parties both state in their briefs that immigration officials granted Ms. Sebihele parole and permitted her to enter the United States while her removal proceedings took place. (Dkt. 1 ¶ 39; Dkt. 7 at 2). However, none of the documentary evidence in the record indicates that Ms. Sebihele was paroled or—if she was paroled—if, when, or how her parole terminated.

Paroled or not, Ms. Sebihele entered the United States, free from detention. An immigration judge ordered her removed to the Democratic Republic of Congo on April 4, 2019. Dkt.7-1 at 9–19. She appealed that decision to the Board of Immigration Appeals (BIA).

Local police arrested Ms. Sebihele in Louisville, Kentucky, on December 27, 2025 and she was charged with driving under the influence, wanton endangerment, and criminal mischief. She was turned over to the custody of U.S. Immigration and Customs Enforcement and issued a Warrant of Removal/Deportation on May 11, 2026 Dkt. 7-1 at 2.

The BIA dismissed Ms. Sebihele's appeal on April 1, 2026. Dkt. 7-1 at 6–8. On June 25, 2026 the Tenth Circuit Court of Appeals stayed her removal pending its ruling on her petition for review of the removal order. Dkt. 7-2.

Ms. Sebihele remains detained at the Clark County Jail. She has not received a bond hearing.

### II. Analysis

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Ms. Sebihele argues that her continued detention violates the Immigration and Nationality Act (INA) and the Fifth Amendment's Due Process clause. The respondents answer that the INA—

specifically 8 U.S.C. § 1225(b)(2)(A)—requires the government to detain her through the conclusion of her removal proceedings.

On July 30, 2026, the Seventh Circuit decided *Cirrus Rojas v. Olson*, --- F.4th ----, No. 25-3127, 2026 WL 2198315 (7th Cir. July 30, 2026). In *Cirrus Rojas*, the Seventh Circuit determined that § 1225(b)(2)(A)'s mandatory detention scheme applies only to noncitizens who are "seeking admission" to the United States and not to noncitizens like Ms. Sebihele who have entered the United States without obtaining lawful admission, remained inside the United States for years, and have been apprehended in the interior of the United States by immigration officials.

Even after *Cirrus Rojas*, the respondents insist that Ms. Sebihele is subject to mandatory detention under § 1225(b)(2)(A) because she applied for admission at a port of entry and was granted parole. Dkt. 11. Their position is based on one provision of the INA and a related agency regulation.

The Secretary of Homeland Security may permit a noncitizen to enter the United States on parole according to 8 U.S.C. § 1182(d)(5)(A). "[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien *shall forthwith return or be returned to the custody from which he was paroled*." *Id.* (emphasis added). Additionally, the former parolee "shall continue to be dealt with in the same manner as that of *any other applicant for admission* to the United States." *Id.* (emphasis added).

The respondents posit that the "custody from which" Ms. Sebihele "was paroled" was that of an "arriving alien" as defined by 8 C.F.R. § 1001.1(q). An arriving alien is "an applicant for admission coming or attempting to come into the United States at a port-of-entry." *Id.* "An arriving alien remains an arriving alien *even if paroled* . . . and *even after any such parole is terminated or revoked*." *Id.* (emphasis added).

3

As the respondents see it, Ms. Sebihele's parole permitted her to physically enter the United States, but she never ceased to be—for legal purposes—an arriving alien and applicant for admission at a port of entry. When her parole terminated, she reverted to that position by operation of the INA and became, once again, subject to compulsory detention under § 1225(b)(2)(A).

The respondents' position fails as a matter of fact. No evidence in the record confirms that Ms. Sebihele was ever granted parole. If she was, no evidence tells whether or when her parole expired or otherwise terminated. The respondents build their legal argument on a factual foundation that they have not solidified with evidence.

Regardless, assuming for the sake of argument that Ms. Sebihele was granted parole and that the parole is no longer active, the respondents' legal reasoning cannot be reconciled with *Cirrus Rojas*.

First, § 1225(b)(2)(A) does not mandate the detention of "arriving aliens" as defined by regulation or even all "applicants for admission" as referenced in § 1182(d)(5)(A). "Section 1225(b)(2)(A) imposes mandatory detention on certain 'applicants for admission,' but only those who are also '*seeking* admission.'" *Cirrus Rojas*, 2026 WL 2198315 at *2 (emphasis in original). "The INA defines 'admission' as 'the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.'" *Id.* at *2 (citing 8 U.S.C. § 1101(a)(13)(A)). The respondents do not explain how Ms. Sebihele, by virtue of the revocation of her parole, is now seeking lawful admission after inspection and authorization by an immigration officer.

Second, § 1001.1(q) is an agency regulation. Its sole legal significance is to clarify how the agency applies the term "arriving alien." In *Cirrus Rojas*, the Seven Circuit held that the government's detention authority under § 1225(b)(2)(A) applies only to applicants for admission who are seeking admission. Regardless of whether she meets the agency's definition of an "arriving

4

alien," Ms. Sebihele is not subject to mandatory detention because she is not an applicant for admission who is seeking admission. The government cannot change that reality by pointing to its own regulation.

Third, judges of this Court have repeatedly rejected the argument that a noncitizen granted parole upon arrival automatically becomes subject to § 1225(b)(2)(A) upon expiration of parole. *See, e.g.*, *Zafra Becerra v. Swearingen*, No. 2:26-cv-00438-JRS-MKK, dkt. 16 at *4–6 (S.D. Ind. July 7, 2026); *Madriz Ortiz v. Mullin*, No. 2:26-cv-00320-JPH-MKK, dkt. 11 at *5–7 (S.D. Ind. May 15, 2026).[1] Those decisions have adopted the reasoning of *Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098 (S.D.N.Y. Dec. 17, 2025), and found that the government's reliance on § 1182(d)(5)(A) to invoke § 1225(b)(2)(A) is misplaced. Here, the respondents do not confront this Court's prior decisions, *Qasemi*, or their reasoning.

As *Qasemi* explains at length, § 1882(d)(5)(A) "does not state that a noncitizen is returned to the 'status' they held upon their parole, that they revert to status as an 'arriving alien,' or that they must be detained." 2025 WL 3654098 at *10. Rather, the statute directs that a former parolee be "returned to the *custody* from which he was paroled," and the "law and the statute draw a distinction between 'detention' and 'custody.'" *Id.* (emphasis added).

---

[1] *But See Montiel Fuenmayor v. Swearingen*, No. 2:26-cv-00293-JRS-MJD, dkt. 14 at *3 (S.D. Ind. June 4, 2026) ("Whether a former parolee arrested in the interior of the United States is eligible for discretionary release under § 1226(a) or subject to mandatory detention under § 1225(b)(2)(A), and whether a § 1225(b)(2)(A) detainee has a due process claim against indefinite detention, are hardly questions of settled law. Nevertheless, a habeas petitioner generally bears the burden of proof. [. . .] Further, perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority. [. . .] Mr. Montiel Fuenmayor's bare-bones petition—written and filed by an attorney—relies on an incomplete factual recital and an undeveloped legal argument with no citation to authority. When the respondents answered the petition with a robust evidentiary record and responsive legal argument, Mr. Montiel Fuenmayor's counsel declined to reply and advocate for relief under the facts as they are documented. He has not carried his burden of demonstrating that his detention violates the Constitution and laws of the United States.") (footnotes, quotations, and citations omitted).

"Custody" does not necessarily mean physical custody. It concerns any status under which a person or thing is under "the care and control of [another] for inspection, preservation or security." *Black's Law Dictionary* 390 (7th ed. 1999). [. . .]

A noncitizen in asylum proceedings who is returned to the custody from which he was paroled loses the freedoms associated with parole status and is once again subject to the same constraints on liberty that apply to any noncitizen in removal proceedings without parole. [. . .]

He is restrained from working for a wage and from applying for Federal public benefits. Most important, without parole status, he is subject to detention even if he has not been accused of, arrested for, or committed a crime, so long as the Government determines that he presents a flight risk or a danger to the community. *See* 8 C.F.R. § 236.1(c)(8). Those are all freedoms enjoyed by the public generally but not enjoyed by a person such as Qasemi who is applying for admission to the United States but has not yet been admitted. It is this "custody" that Section 1182(d)(5)(A) contemplates a noncitizen must be returned to following termination of their parole. In other words, under Section 1182(d)(5)(A), the day after a noncitizen's parole status is terminated, under the INA that noncitizen is in the exact same position they were the day before, except that they no longer have parole status and the freedoms associated with it. The statute does not require the Court to pretend that Qasemi was never paroled and permitted to live freely in this country. A noncitizen is not reverted by operation of law to status as an arriving alien—they remain a noncitizen living in the United States who used to be paroled and must be treated by the INA accordingly.

*Id.* at *10–11.

Though *Qasemi* is not binding on this Court, its careful analysis remains persuasive. If Ms. Sebihele was paroled, and if her parole has been terminated, her "return to custody" under § 1182(d)(5)(A) does not necessarily mean a return to physical custody and certainly does not mean a return to mandatory, unlimited detention under § 1225(b)(2)(A). It means she loses the benefits associated with parole and must be treated as any other applicant for admission—in this case, any other applicant for admission arrested in the interior of the United States, years after entering. In other words, her return to custody is governed by § 1226(a).

### III. Scope of Relief

By statute, Ms. Sebihele is eligible for release on bond under § 1226(a), but she has not received a bond hearing. Her continued detention without a bond hearing therefore violates "the

6

laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The remaining question is the remedy, which should be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984).

Ms. Sebihele seeks immediate release. Immediate release is the customary remedy in habeas proceedings. *See Thuraissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). However, Ms. Sebihele is subject to § 1226(a), which allows the government to "continue to detain" her. 8 U.S.C. § 1226(a)(1). Ms. Sebihele's custody is not unlawful for the reason that the government lacks authority to detain her; it is unlawful only to the extent she has been deprived of the bond hearing that the law requires.

## IV. Remaining Claims

Because the Court has found that Ms. Sebihele's detention violates the INA, it need not reach her claim that her detention violates the Fifth Amendment. *See Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012) ("[C]onsistent with the principle of avoiding unnecessary constitutional decisionmaking, judges are to address the statutory defense before the constitutional.").

For related reasons, the Court also does not reach Ms. Sebihele's argument that, if her relief is limited to a bond hearing, the Court must place specific constraints on the immigration judge's decision-making. The Seventh Circuit has not issued a decision on the question of who bears the burden of proof in an administrative bond hearing, and the circuits that have answered the question have not answered in unison. Section 1226 is silent as to the burden of proof, so Ms. Sebihele's argument must be purely constitutional. A bond hearing without Court-imposed instructions regarding the burden of proof may yet result in his release on bond, or it may result in the denial of bond for reasons unrelated to the burden of proof. Ms. Sebihele's detention is currently unlawful because she has been deprived of a bond hearing—not because the government

conducted a bond hearing that failed to conform to specific standards. At this point, it is prudent for the Court to avoid an unnecessary constitutional decision. *Thomas*, 697 F.3d at 613.

## V. Conclusion

The Petition for Writ of Habeas Corpus, Dkt. [1] is **GRANTED** insofar as the respondents will have **ten days**[2] to either (1) provide Ms. Sebihele with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations, or (2) release her from detention under reasonable conditions of supervision. If the respondents hold a bond hearing, the attorney general is ordered to notify Ms. Sebihele's counsel of the scheduling of the bond hearing. Respondents must file documentation certifying that they have either provided the bond hearing or released Ms. Sebihele within **two days** after the hearing or her release, whichever is applicable.[3]

The petition is **denied** to the extent it seeks immediate release.

The **clerk is directed** to enter **final judgment**.

**IT IS SO ORDERED.**

Date: 8/4/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Jessica Dawgert
Ariela Lake Law & Consulting PLLC
jess@allc.law

---

[2] This deadline may be modified without need for Court involvement upon agreement by Ms. Sebihele and the federal respondents.

[3] As an alternative to denial, the respondents ask the Court to dismiss this action and direct Ms. Sebihele to request a bond hearing. Dkt. 11 at 2 n.1. In previous cases on the §§ 1225-1226 issue, the Court has not denied habeas relief for failure to request a bond hearing in the immigration court due to the government's firm stance that bond was not possible. *See, e.g.*, *Mohammed v. Olson*, No. 1:25-cv-2404-TWP-MKK, 2025 WL 3541819, at *2 (S.D. Ind. Dec. 10, 2025). Given that the government has only changed that position in response to *Cirrus Rojas*, and after this litigation began, the Court will not impose an exhaustion requirement now and will instead order the respondents to schedule a bond hearing or release Ms. Sebihele.

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP (New Albany)
jlowe@k-glaw.com

Shelese M. Woods
DOJ-USAO
shelese.woods@usdoj.gov